PONCE REAL ESTATE CORP. ET AL., Appellants, v. THE REGISTRAR OF PROPERTY OF PONCE, Respondent.

No. 1395. Decided February 7, 1963.

*Práxedes Alvarez Leandri* for appellants. Respondent registrar appeared by brief.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Ponce Real Estate Corp., as lessor entity, and Edison Puerto Rico Stores, Inc., as lessee, agreed to the lease of a lot situated in Plaza Muñoz Rivera of Ponce. The lessor bound itself to erect a two-story building with an area of some 6,000 square feet in accordance with the specifications approved by both parties, to be devoted to a first-class store for the retail sale of merchandise. The lease term was fixed at 10 years commencing upon the termination and delivery of the building, subject to extensions at the lessee's option for two periods of five consecutive years. They agreed upon a rental of $15,500 annually. At the end of the document it is set forth that in testimony thereof the parties have executed the same through its duly authorized officers, and further: "PONCE REAL ESTATE CORP., By: (s) Frank Vilariño.— EDISON PUERTO RICO STORES, INC., By: (s) Harry Edison. —ATTEST: Eric Newman, Secretary.—The seal of Edison

Puerto Rico Stores, Inc. is affixed thereto. Affidavit No. 637.—Subscribed to before me by Mr. Frank Vilariño, of full age, married, businessman and resident of Ponce, as Secretary of Ponce Real Estate Corp., personally known to me, in Ponce, Puerto Rico, this 7th day of December 1960.— (s) P. Alvarez Leandri.—Práxedes Alvarez Leandri, Notary Public. State of Missouri, City of St. Louis: SS.—On this 23d day of December 1960 there appeared personally before me Harry Edison and Eric P. Newman, by me known, who being duly sworn stated that they are President and Secretary of Edison Puerto Rico Stores, Inc., and that the seal affixed to that document is the corporate seal of that corporation and that the said document was signed and stamped on behalf of the said corporation under authority of its Board of Directors, and the said Harry Edison and Eric P. Newman admitted that the said document was the free act and execution of the said corporation." (Signed by Ann Barrett, Notary of the County of St. Louis.)

On January 16, 1961, the preceding lease contract thus executed and signed was protocolized by Notary Roberto Davis Vázquez at the request of Frank Vilariño, who appeared as the only party in the deed of protocolization. The document was presented in the registry together with other complementary documents, and the registrar refused to record it making the following note:

"Record of this document is hereby denied, after examining several complementary documents, entering instead a cautionary notice for the legal period of one hundred twenty days, on the ground that there is an incurable defect consisting in that the same is contrary to Articles three of the Mortgage Law and fifty and fifty-one of its Regulations, since every document executed in Puerto Rico, in order to permit of the record in the Registry of Property, must be embodied in a public instrument; the affidavit not being the public instrument contemplated by the Act and the protocolization thereof made by one of the parties not producing the effects of being put in a public deed,

all of which is set forth at folio 130, volume 712 of Ponce, property number 2161 quadruplicate, entry letter A. The said property is encumbered by a $100,000 mortgage in favor of the bearer by endorsement of a note, and is subject to the lease entry object of this note. Ponce, July 28, 1961. (s) Miguel Ramón Aguiló, Registrar."

In this administrative appeal the contracting parties challenge the registrar's decision alleging that he erred (1) in setting forth that the document presented for recording was contrary to arts. 3 of the Mortgage Law and 50 and 51 of the Regulatíons, and (2) in setting forth in his note that the protocolization of the lease contract signed under affidavit does not produce the effect of putting the document in a public deed.

Section 1232 of the Civil Code (1930 ed.) provides that the following must appear in a *public instrument:* (1) acts and contracts the object of which is the creation, conveyance, modification, or extinction of rights on real property; (2) *leases* of the same property for six or more years, provided they are to the prejudice of third persons. Public instrument, according to § 1170 of that Code, is that authenticated by a notary or by a competent public official, with the formalities required by law. Section 1439 provides that with regard to third persons, leases of real property which are not duly recorded in the Registry of Property shall be of no effect. And art. 2 of the Mortgage Law, that the following shall be recorded ... (5) contracts for the lease of real property for a term exceeding six years, or ...; and art. 3, that in order to permit of the record of the instruments mentioned in art. 2, they must be embodied in a public instrument, final judgment, or authentic document, issued by a judicial authority, or by the Government or its agents in the form prescribed in the regulations. By title deed, for all purposes of the record, shall be understood the *public and authentic instrument*, executed inter vivos or *mortis causa*, upon which the person in whose favor the record is to be made bases his claim to the

real property or property right, according to art. 50 of the Mortgage Law Regulations, and—art. 51—authentic documents, for the purposes of the law, shall be considered those which, serving as title deeds for the ownership or property right, may be issued by the Government or by an authority or official of competent jurisdiction to issue the same, and which constitute prima facie evidence. MORELL comments that the concept *on which the person in whose favor the record is to be made bases his claim to the real property right* marks the essential character of the title deed *for the purposes of the Mortgage Law*, "distinguishing the public instrument to which the law refers from any other public instrument alien to the record, or presented only as complementary, accessory, or secondary, as evidence of facts relative to recordable or recorded rights." [1]

Pursuant to the above copied provisions of law and of our interpretative authorities, there would be no doubt that the lease contract in question was not recordable in the registry in the original form in which it was executed. *Martínez* v. *Registrar of Mayagüez*, 30 P.R.R. 82; *Successors of Andréu & Co.* v. *Registrar of Property*, 20 P.R.R. 396; *Delgado* v. *Registrar of Caguas*, 22 P.R.R. 117; *Pietri et al.* v. *Registrar of San Germán*, 22 P.R.R. 678; *Becerril et al.* v. *Post et al.*, 22 P.R.R. 681; *Brac* v. *The Registrar*, 23 P.R.R. 696; *Berrizbeitía* v. *Registrar*, 40 P.R.R. 586; *cf. Rosario* v. *Registrar*, 59 P.R.R. 430. Section 45 of the Law of Evidence provides that public documents are such as are specified in § 1184 of the Civil Code (1911)—§ 1170 of the 1930 ed. above copied—and § 46 that private documents are all other writings. The question to be actually considered is whether the lease contract, which is a private document, is recordable *as the deed on which are based the rights* of the contracting parties by reason of it being filed in a notary's protocol. This brings us to consider, with respect to the registry, the category of

---

[1] I MORELL, *Legislación Hipotecaria* 558.

a notarial act of protocolization as basis for recording one of the deeds—rights—referred to in art. 2 of the Mortgage Law which, according to art. 3, must be embodied, in order to permit of the record, in a public instrument, final judgment, or authentic document.[2]

▐ IGNACIO DE CASSO Y ROMERO and FRANCISCO CERVERA Y JIMÉNEZ-ALFARO in their *Diccionario de Derecho Privado*, vol. I, p. 1806 (1954), sum up some concepts of the *public deed.* They criticize to a certain extent, in the strict sense, the definition of *Real Academia de la Lengua*, "public instrument, signed in the presence of witnesses by the person or persons executing the same, to all of which the notary attests," considering that the legislation and the doctrine distinguish two classes of public instruments: the *deed* and the *act.* They give us the definition of public deed by Sancho Tello as "the original drawn up by the notary *on the act submitted to him for consideration,* signed by the executing parties, by the subscribing witnesses and by him known, as the case may be, and signed and marked by the same notary." Also by AZPEITÍA, who defines it as the "original authorized by a notary embodying the essence of a contract or of a juridical act inter vivos or of last will, therefore referring *always to a declaration of will.*" CASSO and CERVERA further state that Fernández Casado, followed by López Palop, bases the definition of public deed on his *teleology of creating, modifying, or extinguishing juridical relations,* and further: "Aguado contends that the *deed* contains a juridical transaction, namely, a declaration of will (unilateral, bilateral, or plurilateral) aimed at producing a juridical effect. *It is distinguished, by its contents, from the act in which the subject matter of the latter is simply the recital of a fact.* In the same connection, art. 144 of the Notarial Regulations in force

---

[2] We should not be concerned at this time with the final judgment, by judicial authority, nor with the authentic document, by government authority, because it is not pertinent to the problem involved herein. I MORELL 560–84; GALINDO Y ESCOSURA, *Legislación Hipotecaria* 479-86.

provides in paragraphs 2 and 3 that the contents proper of public deeds are the declarations of will, the juridical acts which imply the *giving of consent* and the *contracts* of all kinds. The orbit proper of the notarial *acts* affects exclusively juridical *facts* which, by their peculiar nature, *can not be classed as acts or contracts.*" Further on they say: "The requisites denominated by the doctrine as internal, of the public *deed*, coincide with the *essential* requisites of the juridical transaction contained. Subject matters, object and cause, shall therefore be those common to the *latter* and to the *former.*"

Referring now specifically to the notarial act (p. 153), Casso and Cervera give us the definition by Novoa as the "public document authorized by a notary in which, at the request of a party with sufficient intellectual capacity, there is set forth a fact which the notary witnesses or is known to him, *which can not be the object of a contract,* the recollection of which it is convenient to preserve in authentic form." Further on: "Velasco, on his part, gives a definition in accordance with arts. 143 (now 144), paragraphs 1 and 3, and 197, subd. 1, of the 1935 Notarial Regulations: public instrument which affects *exclusively facts* and circumstances in connection therewith, which the notaries witness or are known to them, and which, by their peculiar nature, can not be classed as *acts or contracts.*" Referring to its characteristics, they say (1) that it is a public instrument, the same as the deed itself, (2) authorized by a competent notary, and (3) that it refers to *juridical acts;* and that the latter "is the fundamental characteristic which outlines the content or substance of the *acts* as compared with the *deeds.* Because, as stated by Azpeitía, despite the distinction, consolidated within the Spanish technique, of original deeds, on the one hand, and notarial acts, on the other hand, the term original deed has a broad meaning which comprises also the notarial acts, public instruments, because in fact, the acts have a primary exterioriza-

tion which is the original, always the authentic, and which also is essentially a deed. The *substantial and specific distinction* is derived from this generic equality, and hence the notarial technique reserves the name of original deeds for those which *exteriorize a juridical act embodying a declaration of will*, leaving out of such denomination the other notarial documents. There are, therefore, within the juridical reality which the notary attests two classes of *facts:* some, the constitution of which depends on the will of the party appearing before the notary *and are subject to the technical judgment of the notary* who sets up their plastic form and embodies them properly *in the execution*, and hence the reference to them as *executing parties;* other facts come within the juridical sphere without the intervention of the parties who promote the notarial activity; the notarial sanction *is limited to subjecting them to the appearing party*, who acts only by requiring, promoting the notarial function and, hence, they are referred to in these cases as *requirers.* In both notarial interventions the parties appear, but the fact, in the first cases, *is created and stated*, and in the latter *it is merely stated;* the former may be called *juridical acts*, the latter only *juridical facts.*" In considering the importance of the *act* as instrument, even though they consider its value of **mere record,** Casso and Cervera comment that his aspect of public officer prevails in these cases over the notary's aspect as *law technician*, and that, as asserted by Velasco, the notary is actually not only the officer but the only party to the *act*, who will state the bare fact of what he sees, witnesses or occurs, whether or not it is against the interest of the requirer or interested party; that the notary is essential, and it makes no difference whether or not the requirer is known to him and whether or not he is competent, acts in either way, in his own right or as representative, is agreeable or not and signs or not, because everything which *in connection* or with *the birth of a transaction* is of extraordinary importance has

none and means nothing where the purpose is *to determine* a fact and its circumstances, no matter what they are, provided the notary is able to evaluate them for what they are. And that since the notarial intervention is of such importance, Fernández Casado points out that the notary should proceed to set up the acts with the most absolute impartiality, and that "he should not assert facts of which he is not absolutely sure, and confine himself to the sensible facts *without inducing causes or deducing consequences.*" So far this part of the useful and accurate summary of such a sweeping matter which Casso and Cervera set forth in their *Diccionario* which is of essential application to the problem under consideration. (Italics in the original and italics ours.)

The meaning of the term "deed," as used in art. 50 of the Regulations, which is synonymous with public document or instrument, does not have precisely the identical meaning of "deed" under art. 2 of the Law which, according to art. 3, in order to permit of the record must be embodied in a public *instrument.* In art. 2 it is employed as the juridical act or reasons for acquiring and possessing, according to Morell;[3] the right itself or juridical relation, we say, which is created, arises, is modified or extinguished; in short, the juridical transaction on which the parties base their rights. Naturally, the *deed,* as a public and authentic document which it is, is not excluded from the concept of art. 50 of the Regulations, so that there is perfect harmony between that article and § 3 of the Law, although it is not limited either to the *deed.* In this connection, the notarial act of protocolization of a private document constitutes unquestionably an authentic public document or instrument which guarantees the genuineness and public attestation of the fact involved therein, such as the filing of that document in the notary's protocol, and attests publicly that the transcript made by the notary in the copy of the act issued by him is a true copy of the

---

[3] I Morell 320, 551; II Roca Sastre, *Derecho Hipotecario* 146 *et seq.*

document on file. However, this act does not constitute the public *deed* such as that constituted by a declaration of intention before notary and with his intervention in which the contracting parties, having asserted their right, it is so stated and attested by notary: the birth of a juridical transaction, or right, or the deed (in the concept of art. 2) ; or, citing Fernández Casado, it is not the document in which a juridical relationship is created, modified, or extinguished. Contracts do not attest with respect to third parties if they are not executed before a notary.[4]

In significant harmony with the attribute of the public attestation of the registry, which carries in itself the attributes of authenticity, legality and guarantee—to a third party—is the mission of the notary, the only officer under our legal system who, in the case of private and voluntary acts or contracts, extrajudicial, or acts outside the jurisdiction of political and administrative agencies of the government, exercises by delegation that part of the State's sovereignty which consists in the public attestation, which all other individuals in society accept and create a private act or contract without having witnessed it.

In harmony with this significant concordance, the notaries who, as stated in *Las Partidas*, Part. 3, Tit. XIX, Law III, "act as public witnesses of the contracts and agreements which men enter into with one another," are not mere witnesses who witness passively a declaration of will and attest to it. They play a more important role in the birth of the right, relationship or juridical transaction between the parties which is set forth in the instrument. GONZÁLEZ PALOMINO

---

[4] This does not mean that the notarial act, which has been characterized in the doctrine as a *special* public instrument, will never have in the registry the effect of producing or permitting of record or entry, usually as an auxiliary, complementary or aclaratory instrument in the cases and for the purposes permitted by the Law or the Regulations. *Cf.* I JOSÉ MARÍA MUSTAPICH, *Tratado Teórico y Práctico de Derecho Notarial—Escrituras y Actas* 159–72 (1955) ; I MORELL 572. See the enumeration of ROCA SASTRE, *op. cit.* 156 *et seq.*

characterizes the notary's action as that of the *"pedagogue of the will, helping to form the perfect consent, forming and affirming the will."* SANAHUJA Y SOLER calls this action work of *"juridical configuration"* because, he says, "the notary assists as a natural thing in the genesis and development of the juridical transaction which is submitted to his authorization and performs work of direction and adjustment, in order to conform the act to the interest of the parties and to the law . . . to the action of applying to a particular fact the necessary formative concepts for the accomplishment of the assumption provided in the law, in accordance with the interest of the parties. It is a condition precedent or simultaneous with the authentication of the act. By such action the notary reduces to economic or moral matter the internal juridical form which constitutes the basis of the external or instrumental form."

Returning to GONZÁLEZ PALOMINO, he says that before such "pedagogical" intervention the notary does not believe that there was "conscientious will or true consent." In the field which gives life to the "statement *embodied* in the instrument, as such juridical statement . . . as a technico-juridical means, earnestly desired, to accomplish a practical purpose," the notary, says the textwriter, acts as an architect. And referring to his exceptional capacity as a witness of the declaration of will and of the juridical transaction, he states that the notarial attestation, the value of the notary's assertions, has two prevailing and distinguishing characteristics from almost any other testimony, with abstraction of his moral capacity: (1) that the notary is a *requested* witness, that is, an able "professional" witness who proposes to examine and recites the facts which he sees, as distinguished from the "contingent" witness who is unaware of the facts and relates his impressions as to them as if they were his own; and (2) that the notary is not a witness outside the public instrument itself, "so that *he relates the facts, not at*

*a subsequent moment, but at the very moment they occur*, without being able to alter neither the facts themselves, since the consent of the parties is necessary (signature of the executing parties or of the witnesses), nor the date and place." (Italics by the author.)

Lastly, referring to the notary's function in the public deed in the *formation* and *attestation* of the will of the executing parties, "which requires qualifications of juridical formation, which are not improvised," the textwriter observes that it is said that the notary-jurist, as a functional unit, "*applies* the law exactly as the judge does, with the only difference that the latter does it *in the suit* and the former in the *normality*," and applies it "with the same logical plan:... norm, fact, consequence... This consequence of the application of the norm to the fact made by the notary is the *declaration of legality* of the act embodied in an instrument." (Italics by the author.) Further clarifying, he states that the notary does not properly apply the law, but rather complies with and abides by it, adopts the corresponding rule of conduct as respects the legal precept, and by governing his own conduct, not another's conduct, "he abstains from intervening as long as another's conduct does not abide by the norm." [5]

Hence, the fundamental differences for the purposes of the record which gives shape to the public attestation of the registry—third person—between the private document, which may be true and also authentic, and the public instrument executed before a notary and with the intervention of the notarial function; and the difference, now specifically as respects the question before us, between the public *deed* in which the title sought to be recorded must be stated (arts. 2, 3) or document on which the parties base their right, and any other public instrument, such as this notarial act of protocolization in which the notary has not intervened as to the

[5] I José González Palomino, *Instituciones de Derecho Notarial* 49–76 (1948); I José M. Sanahuja y Soler, *Tratado de Derecho Notarial* 57 *et seq.* (1945).

214

formation of the right claimed or juridical transaction, nor attests publicly to the will declared with respect thereto, nor to the consent, nor to the authenticity proper, because the will has not been declared before him in accordance with the legal formalities by persons known to him or who have been identified before him.

■ Owing to the lack of those fundamental guarantees respecting the deed or right to be recorded, in the form as well as in the substance, which require the notary's intervention, which guarantees are also ingredients of the public attestation in the registry—to the third person—the private lease contract executed in this case, even if it were filed in the protocol of a notary, is not recordable.

■ In their brief petitioners have not argued against the principles hereinabove set forth. In assailing the decision denying record, they rely fundamentally on a provision of § 17 of the existing Notarial Law which in its pertinent part provides: "No operation shall be carried out in the books of the Registry of Property in connection with a notarial instrument executed outside of Puerto Rico unless the same has been previously protocolized in Puerto Rico, and it shall be the duty of the notary to cancel the same scheduled fees as if the instrument had been originally executed in Puerto Rico."

The foregoing provision of law is not applicable, since the document in question was executed in Puerto Rico and not outside of Puerto Rico. According to the final part which we copied at the beginning, it is obvious that the document was signed by both parties in Puerto Rico, although only the signature of one of the parties was affixed here before a notary. Notary Ann Barrett of St. Louis does not attest in her affidavit that the other executing parties signed the document in her presence. However, even more important than that fact is that § 17 of the Notarial Law does not have, from its face nor from its legislative history, the effect, in our

opinion, of altering a completely outmoded mortgage law system by permitting, by an act of protocolization, documents lacking the necessary guarantees under the Law and its Regulations to have access to the registry of property to the prejudice of third persons. The protocolization of the private lease contract was not an act to embody the latter in a public deed.

The decision of the Registrar of Property of Ponce appealed from will be affirmed.